STATE OF VERMONT
ENVIRONMENTAL COURT

In re Lowre Variance  {  Docket No. 19-2-11 Vtec

## Decision on Motion to Dismiss

Cheryl Monteith ("Appellant") has appealed a decision of the Town of Peacham Zoning Board of Adjustment ("the Board") granting a variance to Richard Lowre ("Applicant") for a pre-existing sign that the Board determined to be 0.29 square feet larger than what is allowed under the Town of Peacham ("the Town") Zoning Bylaws ("the Bylaws").  Currently pending before the Court in this matter are two motions filed by Applicant: a motion for summary judgment on some of the questions Appellant raises in her Statement of Questions and a motion to dismiss both Appellant and another party in this appeal, Martha Evangelista, for not meeting the statutory requirements necessary to be an "interested person" in these proceedings.

Because Appellant is the only party appealing this case, resolution of the motion to dismiss could lead us to dismiss the appeal and regard the other motion as moot.  Therefore, we first address the motion to dismiss.  We address the motion for summary judgment in an accompanying Entry Order, also issued today.

In this proceeding, Appellant and Applicant both appear pro se.  The Town is represented by John H. Marshall, Esq. and Kane H. Smart, Esq. appears as co-counsel. Interested persons Martha Evangelista and John Sheehan also appear pro se.

## Factual Background

For the sole purpose of putting the pending motions into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1.     Applicant owns a parcel of land approximately 5.15 acres in size in Peacham, Vermont. Applicant's parcel does not have road frontage but is served by an easement over lands of those from whom he bought his property, Donald and Deane Moore.  This easement provides access to and from Applicant's property and the nearest town highway: Hollow Wood Road.

2.     Sometime before September 20, 2010 Applicant constructed a free-standing sign, attached to support posts, on the Moore property, within the easement used to access Applicant's home.  He obtained approval from Donald Moore to do so.  The sign is located

1

approximately 19 feet 10 inches from the centerline of Hollow Wood Road and is located within the utility easement held by Green Mountain Power. The sign is located within what has been described as a utility easement "dead zone," meaning the land between a utility pole and its support pole.

3.      The sign, as constructed, contains two words in Italian, "Stella Danza," which Applicant translates as "Star Dancer." Applicant submitted several photos in support of his motion to dismiss, and we have attached a copy of his photo Exhibit 5 to this Decision, solely for reference purposes.

4.      When Applicant constructed his sign he did not have a zoning permit to do so. On September 20, 2010, Applicant applied to the Town's Zoning Administrator ("the ZA") for a zoning permit for the disputed sign.

5.      The ZA denied Applicant's application on October 6, 2010 and provided several explanations for his denial: that the sign exceeds the maximum size allowed, that the sign is not located on Applicant's property, and that it may be encroaching onto the setback required from the centerline of the adjoining road, Hollow Wood Road. Applicant appealed that determination to the Board.

6.      On January 20, 2011, the Board granted a variance to Applicant for his sign.[1] The Board determined that the sign is 0.29 square feet larger than the 12 square feet allowed by the Bylaws and granted a variance for the size difference.

7.      The Board also determined that the sign is 19 feet, 10 inches back from the centerline of Hollow Wood Road. Although the Board concluded that the applicable setback is either 24.9 or 45 feet,[2] it was not convinced that the setback provisions apply to roadway signs. Nonetheless, as part of its approval of a variance for the size of the sign, the Board imposed the condition that the sign be moved to create a 26-foot setback from the centerline of Hollow Wood Road. The

---

[1] It is unclear from the Board's decision whether the Board merely granted Applicant a variance or a variance as well as a zoning permit. Appellant questions whether Applicant properly presented the Board with a variance request. However, the Board's January 20, 2011 decision (a copy of which Applicant submitted as Exhibit 8 to his motion to dismiss) expressly states that the Board hearing was noticed and conducted to consider a "Variance for a sign: Application #16-10 of Richard and Donna Lowre, 164 Hollow Wood Road, Peacham, Vermont." Resolution of Appeal Request, at 1 (Town of Peacham Zoning Bd. of Adjust. Jan. 20, 2011).

[2] The discrepancy on setbacks appears to be due to the fact that the land on which the sign is constructed is located in two zoning districts.

2

decision also required the sign to be located at least one foot outside the property line shared with abutting land owner John Sheehan.

8.     After the Board released its decision on January 20, 2011, Appellant filed a timely appeal with this Court.

9.     Appellant resides on property off Thaddeus Stevens Road about a quarter of a mile from Applicant's sign.  Her property and that of Applicant is depicted on an aerial photo which Appellant retrieved from an internet-based website and attached as Exhibit D to her response to Applicant's motion to dismiss.  We have attached a copy of this photo to this Decision, solely to demonstrate the correlation between the parties' properties.

10.    Martha Evangelista and John Sheehan have also entered appearances in these appeal proceedings as interested persons.  Ms. Evangelista appeared before the Board as a representative of her then-housemate, now-husband, John Sheehan.  Mr. Sheehan owns property that abuts Applicant's and the Moore property to the south.

## Discussion

Appellant has appealed the Board's decision granting a variance to Applicant for a pre-existing sign that the Board determined to be 0.29 square feet larger than what is allowed under the Bylaws.  Applicant has filed a motion to dismiss both Appellant and another party in this appeal, Martha Evangelista, for not meeting the statutory requirements necessary to be an "interested person."

In order to understand the argument Applicant makes in his motion, it is important to note that the term "interested person" is used by the Court in two distinct, but related, ways: as a statutory term of art that is defined in 24 V.S.A. § 4465(b) and describes a party who has standing to appeal the decision of a zoning administrator or municipal panel, see 24 V.S.A. §§ 4465(a), 4471(a),[3] and in an informal sense to refer to any party who meets the requirements to participate in appeals brought by other parties, see 10 V.S.A. § 8504(n).  There is overlap between the two definitions: a party with standing to appeal a decision as an "interested person" under 24 V.S.A. § 4465(b) is also qualified to participate as an interested person in an appeal brought by another person, pursuant to 10 V.S.A. § 8504(n)(5).

---

[3]  A party wishing to appeal the decision of a municipal panel must also meet an additional requirement—participation in the proceeding below, 24 V.S.A. § 4471(a)—but Applicant here does not question that Appellant meets this requirement, and Appellant asserts that she did participate in the Board's hearing.

3

Because of the overlap in these definitions—essentially, an overlap in the qualifications to appear as either an appellant or an interested person in the appeal of a municipal decision—Applicant's challenge to Appellant's and Martha Evangelista's appearance in this appeal relies on the same legal premise. Applicant challenges each of their abilities to qualify as "interested person[s]" as defined by 24 V.S.A. § 4465(b).

The definition of interested person in § 4465(b) is broken down into multiple categories, and to be qualified to appear in this appeal Appellant and Ms. Evangelista must each show she falls within at least one category. Both Appellant's and Ms. Evangelista's assertions as to why each can appear in this appeal speak to the same single category, that described in 24 V.S.A. § 4465(b)(3). Thus, our subsequent analysis addresses whether each party's assertions meet the three requirements of § 4465(b)(3): that each party 1) "own[] or occupy[] property in the immediate neighborhood of a property" subject to the Board's decision; 2) "demonstrate a physical or environmental impact on [his or her] interest under the criteria reviewed"; and 3) "allege[] that the decision . . . if confirmed, will not be in accord with the policies, purposes, or terms" of the Town plan or Bylaws.

We address Applicant's challenge to Appellant's standing first because her dismissal, as the sole appellant in this case, would necessitate dismissal of the appeal itself. Turning to the first requirement of § 4465(b)(3), although the parties dispute whether Appellant can see Applicant's sign from her property, both parties agree that Appellant resides on property that is approximately a quarter of a mile from the sign and that Appellant's residence is on a hill overlooking Applicant's property. Furthermore, Appellant states that her property is in the same neighborhood as Applicant's, and Applicant does not refute this statement. Based on the close proximity of the properties, and the absence of any assertion that they are located in distinct neighborhoods, we find that Appellant meets the first requirement to be an interested person under § 4465(b)(3). That is, we find that Appellant has shown that she owns or occupies property in the immediate neighborhood of the property on which the sign under review is located.

We turn now to the second requirement of § 4465(b)(3)—that Appellant demonstrate a physical or environmental impact on her interest that is related to the criteria under which the Court will review the sign. This statutory requirement incorporates some of the same elements, including injury in fact, that a party must meet to have standing to bring a claim in the Civil

4

Division of our Superior Court. Thus, to determine if Appellant meets this requirement, we first ask whether she has described how the development under review will impact her specifically (i.e., described a concrete and particularized injury) and if she has referenced evidence showing that such impact is not hypothetical (i.e., demonstrated an actual or imminent injury). See Agency of Natural Res. v. U.S. Fire Ins. Co., 173 Vt. 302, 306 (2001) (explaining that Vermont courts have adopted the same restriction as federal courts in terms of hearing only cases where actual controversies exist between the parties and thus only allow parties who meet the requirements for standing in federal courts to raise claims in Vermont courts); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–51 (1992) (describing the requirements for standing in federal courts).

To find that Appellant meets the second requirement of § 4465(b)(3) we would also have to go one step farther—we would need to ask if the impact Appellant demonstrates is related to the criteria under which the Court will review the sign. That is, we would need to conclude that the impact Appellant demonstrates is related to the criteria for granting a variance and to the provisions of the Bylaws from which the variance is sought. Because we ultimately conclude that Appellant fails to demonstrate an injury in fact, as discussed in detail below, we need not complete this step in our analysis. However, we include here a full description of the legal analysis relevant to the second requirement of § 4465(b)(3), so that we may offer a detailed analysis of Appellant's assertions in relation to the second requirement of § 4465(b)(3).

In her memorandum, Appellant appears to make three statements asserting that the sign will impact her interests.[4] Appellant's principal assertion is that the sign will attract the attention of passing drivers and will "create additional traffic, exhaust, noise and lights within view" of her residence. (Cheryl Monteith's Resp. to Mot. to Dismiss Appellant 1, filed June 16, 2011). Appellant also asserts that "[m]any of the residents, myself included, walk their dogs, and run regularly" on the roadway and that "[a]dditional traffic will create safety concerns," presumably for her and the other residents. (Id.) Appellant's third assertion is that the "business associated with [the sign] must be considered as part of the whole" and that

---

[4] We say that Appellant "appears" to make these two statements because her memorandum does not highlight these particular statements as important nor directly state that they are the impacts she is alleging. We give Appellant the benefit of drawing these inferences because to do otherwise appears needlessly strict.

Applicant "operates an unpermitted pizza business from his residence creating traffic in excess of what is normal for a residence." (Id.)

It is clear that some of Appellant's assertions, those that relate to the impact of the sign on others, are insufficient to demonstrate a personal impact on her. Concerns about the impact of a development on others, while perhaps laudable, do not constitute a particularized injury; they are not a "physical or environmental impact on a [particular] party's interest" as required by § 4465(b)(3). See, e.g., Lujan, 504 U.S. at 560 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

The remainder of Appellant's assertions, while they do speak to particularized injuries, are also insufficient to demonstrate an impact on her because some are purely hypothetical and others are based upon facts not germane to the pending application. Appellant asserts that Applicant's sign will create additional traffic, and with that traffic, additional exhaust, noise, and lights, all in view of her home. She also asserts that this traffic will put her at risk when she walks or runs by the sign. Appellant's contention is not that these impacts will result directly from the sign itself; rather, it is that these impacts will result from the additional traffic she anticipates the sign will create.

Interestingly, Appellant does not claim that the sign has increased traffic in the time that it has already existed. Nor does she explain why this particular sign will create traffic in the future. Appellant's anticipation of a future increase in traffic appears to be based primarily on the definition of "sign" found in the Bylaws—that a sign is something that is "designed or used to advertise or call attention or directs a person to any business, association, profession, [etc.]." See Bylaws Article 10. While one of the purposes of a sign may be to attract people to a particular location, we decline to assume that every sign, by definition, creates traffic. Thus, in the absence of any supporting facts, the Court is left with only hypothetical assertions that Applicant's sign will increase traffic and negatively impact Appellant. See City of Los Angeles v. Lyons, 451 U.S. 95, 105–06, 111 (1983) (concluding that a party lacked standing when he alleged that he would suffer a future injury but failed to allege facts supporting the conclusion that he was likely to suffer that injury); see also Amnesty Int'l U.S.A. v. Clapper, 638 F.3d 118, 136 (2d. Cir. 2011) (interpreting Lyons to establish the principle that "a plaintiff may obtain standing by showing a sufficient likelihood of future injury" through the allegation of facts addressing the probability of that injury). Appellant's hypothetical assertions fail to

6

"demonstrate a physical or environmental impact on [her] interests," as required by § 4465(b)(3).

Appellant also appears to base her contention that there will be increased traffic on the reasoning that the sign is associated with a business and that the business has, for an unspecified period, created traffic. These assertions are too vague to support a showing of impact. Appellant concludes that the sign will increase traffic levels, but provides no factual foundation for how she has arrived at this legal conclusion. In fact, it appears that her conclusion is that some undefined business, not the sign at issue in this appeal, could be the cause of unspecified traffic. Appellant fails to provide the basis for why she believes she will be impacted by the decision on appeal here: the grant of a variance for the sign itself.

In contrast, Appellant's real concern appears to be how she may be impacted by a decision granting a zoning permit for the business she alleges Applicant is conducting on his property. But the Bylaws themselves, in § 415, make clear that there must be a distinction between the permit review procedures for signs and the businesses they advertise: "[s]igns are permitted uses considered independently of the businesses or operations they are advertising," and should clarify to Appellant why she is incorrect when she asserts that businesses associated with signs "must be considered as part of the whole." (See Cheryl Monteith's Resp. to Mot. to Dismiss Appellant 1, filed June 16, 2011.)

As discussed above, Appellant has shown that she meets the first requirement necessary to qualify her as an "interested person" under § 4465(b)(3), but she has failed to show that she meets the second requirement. Thus, we find it unnecessary to address whether she meets the third requirement and conclude that Appellant does not have standing to appeal the Board's decision granting a variance for Applicant's as-built sign. Therefore, Appellant must be **DISMISSED** from this appeal.

Because Appellant is the sole appellant in this appeal, we must also now **DISMISS** the appeal in its entirety. Applicant's request that we dismiss Martha Evangelista, a non-appealing participant in this appeal, is now moot as there is no appeal in which she can participate. We emphasize that our ruling today does not address the merits of the decision below but rather solely concerns Appellant's standing; without a proper appellant to appeal the Board's decision we have no jurisdiction to opine on its merits.

7

## Conclusion

For the reasons detailed above, we **GRANT** Applicant's motion to dismiss Appellant from this appeal and consequently **DISMISS** this appeal. Applicant's pending motion for summary judgment is addressed in an Entry Order that is also issued today.

This Decision and the accompanying Entry Order conclude the matters before the Court in Docket No. 19-2-11 Vtec. A Judgment Order also accompanies this Decision.

Done at Berlin, Vermont this 31st day of October, 2011.

 

 

Thomas S. Durkin, Environmental Judge